IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CLINTON STRANGE,      ) | |
|     Plaintiff,      ) | |
| v.      ) | No. 2:19-cv-02494-MSN-atc |
| SHANA RENEE DAVIS,      ) | |
|     Defendant.      ) | |

**REPORT AND RECOMMENDATION AS TO DAMAGES**

Before the Court by order of reference is a determination of the amount of damages to be awarded to *pro se* Plaintiff Clinton Strange following an award of default judgment in his favor. (*See* ECF No. 17.)  The Court held a damages hearing on August 25, 2021.  (ECF No. 18.)  At the hearing, Strange appeared on his own behalf and presented evidence.  Defendant Shana Renee Davis did the same.  For the following reasons, it is recommended that Strange be awarded $500 in damages as a result of Davis's violations of the federal and Louisiana anti-spoofing laws.

**PROPOSED FINDINGS OF FACT**

Strange filed his complaint on July 31, 2019, which consisted of eighteen counts related to hundreds of unwanted phone calls, or robocalls, that he asserts were made to him to try to sell him health insurance.  (ECF No. 1.)  Strange alleges the calls violated federal statutes and Louisiana law.  (*Id.* at 2.)  Strange, who was a resident of Greenwood, Louisiana, at the time the calls were made, asserts that the phone calls were "neighbor hood spoofed" to make it appear that the caller was local.  (*Id.* at 4.)  During the initial automated portion of the phone calls

Strange says that he was given the option of being connected to an agent or being placed on the do-not-call list. (*Id.* at 6.)

Strange's complaint provides details about one such call.[1] On February 11, 2019, after unsuccessfully requesting to be placed on the do-not-call list "several hundred times," Strange pushed the button to be connected to an agent. (*Id.*) He was connected to Davis and spoke to her for about fifteen minutes. (*Id.* at 7.) During the call, Davis emailed Strange an outline of a proposed medical insurance plan. (*Id.*) Within two hours of the call with Davis, Strange attempted to call back the number that appeared on his caller ID but received notice that the number was disconnected or no longer in service. (*Id.*) After his conversation with Davis, Strange did not receive any additional Robocalls related to healthcare insurance plans. (*Id.*)

Strange moved for entry of default on November 12, 2019, asserting that Davis had failed to plead or otherwise defend in accordance with Federal Rule of Civil Procedure 12. (ECF No. 11.) On June 3, 2020, the Clerk entered default against Davis. (ECF No. 12.) On January 4, 2021, Strange moved for default judgment against Davis. (ECF No. 13.) In his motion, Strange explained that he was dismissing most of the counts from his complaint. (*Id.* at 7–9.)[2] Ultimately, four counts remained: Count III, negligent violation of Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii); Count IV, willful and knowing violation of that Act, *id.* § 227(b)(1)(A)(iii); Count IX, negligent violation of Louisiana Caller ID Anti-Spoofing Act of 2009, La. Stat. Ann. § 51:1741.5; and Count X, willful and knowing violation of that Act,

---

[1] At the hearing, Strange testified that he received hundreds of calls, but he provided no additional details about those calls, including who placed the calls. His complaint identifies ten calls he received between April 30 and July 30, 2018, and another on September 5, 2018, in addition to the February 11, 2019 call with Davis discussed herein. (*See id.* at 5.) The complaint also does not provide details about who placed the eleven calls.

[2] Strange also explained that he was "withdraw[ing] his requests for injunctive relief on all counts and causes of action." (*Id.* at 6.)

2

*id.* §§ 51:1741.1, *et seq.* (*See id.*)³  In all, Strange sought damages of at least $11,500. (*See id.* at 15.) On April 15, 2021, after Davis failed to respond to the motion, this Court entered a Report and Recommendation, recommending that default judgment be granted. (ECF No. 15.) Judge Norris adopted that Report and Recommendation on July 15, 2021, granting Strange default judgment and referring a determination of damages to the undersigned. (ECF No. 17.) The Court set a damages hearing for August 25, 2021, and, prior to the hearing, granted Strange's motion for service on Davis and ordered the Marshals to serve her with a subpoena for her appearance at the hearing. (ECF Nos. 21, 22.)

At the hearing, Strange submitted two documents as evidence. First was Exhibit B from his complaint, which includes pictures of a telephone screen with a call purportedly received from (318) 964-8730 (ECF No. 1-4, at 2–3) and a transcript of the February 11, 2019 call between Davis and Strange (*id.* at 4–7). As reflected in the transcript, the two discussed the possibility of Strange getting health insurance through Davis. (*See id.*) Strange provided Davis some of his demographic information and indicated that he did not have any health coverage⁴ and that he would like a policy of $200 or less per month. (ECF No. 1-4, at 4–5.) Davis told Strange that she would email him a copy of the policy, which she eventually did. (*Id.* at 6–7.) Davis informed him that the policy was provided by Agentra Healthcare Solutions. (*Id.* at 7.) Immediately after that, Strange told Davis "[y]ou probably won't take me off your do not call

---

³ At the damages hearing, Strange clarified that, given the overlap between Counts III and IV, he was only seeking damages under the latter count.
⁴ In his complaint, Strange explains that he "has no need of Defendant's goods and services as he is and has been a Priority Group-I registered member in the United States Department of Veterans Affairs Group Health System." (ECF No. 1, at 6.) Under that coverage, Strange receives "free medical care, prescription medications at no cost, and is even reimbursed for travel to and from all his medical appointments." (*Id.*)

3

list.  I don't like robo-callers, I don't like spam, you know and that's what this is, so please take me off your call list, okay?" (*Id.*)  The transcript of the call concludes at that point.

Strange's second piece of evidence was the Federal Communication Commission's Forfeiture Order in *Spiller*, 36 FCC Rcd. 6225 (2021).  Strange informed the Court that he was adopting that order as his closing argument.

Davis testified at the hearing that she believes Strange's lawsuit is frivolous.  She testified that she was an independent contractor for Insurance Savings Direct, a Nevada-based limited liability company.  Agentra was one of the insurance companies for which Insurance Savings Direct placed calls.  She testified that she was an independent contractor and had calls routed to her.  She acknowledged that she had heard of caller ID spoofing but stated she was not clear on its definition.  She then agreed that caller ID spoofing makes it difficult to identify who is calling and that, in certain contexts, it could be fraudulent.  Davis indicated that if a consumer asks to be taken off the call list during a call, she pushes a button indicating the same, but she was unfamiliar with what happened after that.

Strange testified that, over a period lasting five to eight months, he received hundreds of calls; during one five-day stretch he received two calls per day, and during one five-week stretch he received 100 calls.  He testified that the majority were from the same insurance company.  He testified that the calls "annoyed the bejesus" out of him, he got very annoyed, and at one point he got so mad that he took his fist and slammed his phone.  He argued that the act of spoofing demonstrates Davis's willfulness.

## PROPOSED CONCLUSIONS OF LAW

The remaining issue in this case is the amount of damages Strange is entitled to for the violations of Counts III, IV, IX, and X.  Under Federal Rule of Civil Procedure 55(b)(2), "[t]he

court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Where, as here, "a default judgment is entered, 'facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proven in a supplemental hearing or proceeding.'" *Rice v. Mark IV Auto.*, No. 01-1255, 2002 WL 1397252, at *1 (W.D. Tenn. June 11, 2002) (quoting *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001)).[5]

A "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "[T]he theory of [Rule 54(c)] is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." *Abraham v. Am. Res. Co., LLC*, No. 20-13250, 2021 WL 5036151, at *3 (E.D. Mich. Oct. 28, 2021) (quoting 10 Charles A. Wright, et al., *Federal Practice and Procedure* § 2663 (1998)). A default judgment that extends "beyond the scope of the relief demanded" is null and void. *Id.* (citation omitted); *see also Larango v. Wolfe*, No. 3:15-CV-352-PLR-CCS, 2016 WL 5921880, at *2 n.3 (E.D. Tenn. Sept. 9, 2016), *report and recommendation adopted*, 2016 WL 5921794 (E.D. Tenn. Oct. 11, 2016) ("[I]t would therefore be fundamentally unfair to award a form or amount of relief not reflected in that pleading[.]") (citations omitted).

---

[5] Although at the hearing Davis attempted to dispute her liability, the previously entered default means that "[t]he well pled factual allegations in the complaint are taken as true." *Phifer v. SPM Enterprises, Inc.*, No. 21-cv-2249-SHM-cgc, 2021 WL 3878896, at *1 (W.D. Tenn. Aug. 30, 2021) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006)).

I.      **Counts III and IV**

Strange first seeks damages for the violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Count III seeks damages for Davis's negligent violations of the law, and Count IV seeks damages for her willful violations of it. (ECF No. 1, at 25–27.) The TCPA provides that "[i]t shall be unlawful for any person within the US . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, . . . or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). It further provides that "it is unlawful," with several exceptions not applicable here, "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." *Id.* § 227(b)(1)(B). A party may bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation." *Id.* § 227(b)(3)(B).

"If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." *Id.* § 227(b)(3)(C). "Willfully or knowingly" is not defined in the TCPA, and, though courts are split on its statutory meaning, "an award of treble damages remains expressly within a court's 'discretion' even if a willful and knowing violation is found." *Sawyer v. KRS Biotechnology, Inc.*, No. 1:16-CV-550, 2019 WL 688158, at *4 (S.D.

Ohio Feb. 19, 2019), *report and recommendation adopted*, 2019 WL 1125758 (S.D. Ohio Mar. 12, 2019) (citations omitted).

Here, Strange asserts "that the Robocalls were being placed by or alternatively on behalf of the Defendant" and that she "had the ability to start and stop the Robocalls at will because they were being placed by the Defendant or alternatively at the direct instruction or command of the Defendant herein." (ECF No. 1, at 7.) Though Strange alleges he received hundreds of calls in violation of the TCPA and Louisiana laws, he specified in his motion for default judgment that he seeks damages under the TCPA only for the single call on February 11, 2019, between him and Davis. (ECF No. 13, at 7.) Given the evidence presented at the hearing, the Court finds that Strange has demonstrated he is entitled to statutory damages of $500 on Count III for the February 11, 2019 phone call.

Whether to award treble damages under Count IV on the basis that the violation was knowing and willful, however, is left to the Court's discretion.[6] "Courts have applied various tests for deciding when trebling the statutory damage award is appropriate." *Charvat*, 2012 WL 4482945, at *5 (contrasting cases awarding treble damages based on the wrongfulness of the defendant's actions, such as reckless disregard for the plaintiff's TCPA rights or pervasive illegal conduct, with a case suggesting that the purpose of the TCPA's treble damages provision is more compensatory than punitive, designed to encourage parties to file suit where damages would otherwise be minimal); *see also Osgood v. Main Street Mktg., LLC*, No. 16CV2415 GPC BGS,

---

[6] Though "there is some split of authority on exactly what a defendant must know before it can be said to have violated the TCPA knowingly or willfully, the Court need not resolve that dispute here because" Davis has already had default judgment entered against her on Count IV. *Charvat v. NMP, LLC*, No. 2:09-CV-209, 2012 WL 4482945, at *5 (S.D. Ohio Sept. 27, 2012)

7

2018 WL 11408586, at *3 (S.D. Cal. Aug. 20, 2018) ("The purpose of imposing treble damages is to deter future violations.") (citation omitted).

The Court recommends that the TCPA damages award not be trebled in this case. Strange did not offer evidence that he suffered significant damages from the February 11, 2019 call. In addition, immediately after Strange told Davis that he wanted to be removed from the call list, he ceased receiving the communications, indicating that her conduct was not pervasive or recklessly indifferent to his rights. Strange also did not offer any evidence that Davis had made any of the other calls he specifically identified or that she planned to make robocalls in the future, indicating that deterrence is not necessary. Strange has not presented evidence that would warrant this Court exercising its discretion to treble the TCPA award. The Court therefore recommends that Strange be awarded $500 in damages for the TCPA violation in Counts III and IV but that the damages not be trebled.

## II.     Counts IX and X

Strange also seeks damages for the violations of Louisiana's Caller ID Anti-Spoofing Act of 2009, La. Stat. Ann. §§ 51:1741.1, *et seq.* Count IX seeks damages for Davis's negligent violations of the law, and Count X seeks damages for her willful violations of it. (ECF No. 1, at 25–27.) In his complaint, Strange asserts an entitlement to monetary damages under these counts "to be determined by the Court or the trier of fact" based on whether the Court determined the offenses were negligent or knowing. (*Id.* at 26–27.) In his motion for default judgment, Strange asserted that he seeks damages at the discretion of the Court under both counts and specifically seeks $10,000 under Count X, as "[a]t all times relevant to the Plaintiff's complaint he is and was a Service Connected Disabled Veteran. Louisiana Statutes provide for the assessment of

8

Enhanced Civil penalties of up to $10,000 for Willful & Knowing violations." (ECF No. 13, at 8–9.)

> The remedies under Louisiana's Anti-Spoofing Act are as follows:
>
> A. Whoever violates the provisions of this Chapter shall be subject to injunctive relief, treble damages, court costs, and reasonable attorney fees.
> B. Any person or entity who is adversely affected by a violation of this Chapter may bring an action against a person who knowingly inserts false information into a caller identification system with the intent to cause harm to, wrongfully obtain anything of value from, mislead, defraud, or deceive the recipient of a telephone call. A person who brings an action under this Chapter may seek to enjoin further violations of R.S. 51:1741.4 and seek to recover as provided for in this Section.
> C. The attorney general, or a district attorney in a parish where a violation occurs, may bring an action against a violator for injunctive relief and to recover a civil penalty of up to ten thousand dollars per violation.
> D. The remedies provided for in this Section shall not preclude the seeking of other remedies, including criminal remedies, provided by law.

La. Stat. Ann. § 51:1741.5. The statute subjects offenders to treble damages but does not specify the measure of those damages. Though the government may recover a civil penalty of up to $10,000 for such violations under the current statute, the statute provides no indication of the amount of damages a private individual can recover.

The previous version of the statute, which was in effect from August 15, 2009, to July 31, 2018, provided that "[a] person who brings an action under this Chapter may . . . seek to recover the greater of three times the amount of actual damages or five thousand dollars per violation." The current version of the statute does not contain the $5,000 statutory penalty. Though some of the calls described in Strange's complaint occurred while the previous version of the statute was in effect, his pleading does not seek such statutory damages. Instead it seeks damages "to be determined by the Court or the trier of fact." (ECF No. 1, at 26–27.) Under Rule 54(c), Strange is limited to the relief requested in his complaint and thus cannot seek statutory damages for any

older calls made while the previous version of the statute was in effect. *See Abraham*, 2021 WL 5036151, at *3; *Larango*, 2016 WL 5921880, at *2 n.3.[7]

It thus appears that the damages determination is governed by the general damages provision of La. Civ. Code Ann. art. 2324.1, cited by Strange in his motion for default judgment (ECF No. 13, at 8, 9), which provides that, "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." These sorts of general damages "are inherently speculative in nature and cannot be fixed with mathematical certainty." *Banks v. First Guar. Bank of Hammond*, No. 2013 CA 0607, 2014 WL 766846 (La. Ct. App. Feb. 25, 2014) (citing *King v. State Farm Ins. Co.*, 104 So. 3d 33, 40 (La. Ct. App. 2012)). Given the nebulous nature of general damages, "[r]easonable persons frequently disagree about the measure of general damages in a particular case." *Id.* (citing *Youn v. Maritime Overseas Corp.*, 623 So. 2d 1257, 1261 (La. 1993), *cert. denied*, 510 U.S. 1114 (1994)).

As to both Counts IX and X, Strange asserts that Davis's utilization of spoofing caused him actual damages by "depriv[ing] him of the ability to articulate his damages." (ECF No. 13, at 8.) Strange relies on a recent FCC decision for the proposition that "Caller ID spoofing causes actual damages that can be measured." (*Id.* at 8, 9 (citing *Affordable Enters. of Ariz., LLC.*, 35

---

[7] Even if Strange had sought statutory damages under Counts IX and X, he has not demonstrated entitlement to such damages. Strange's complaint alleges that Davis or agents hired by her were responsible for the ten calls made between April 30 and July 30, 2018, but, at the hearing, he testified that that he could not demonstrate that she was liable for those calls. Under Rule 55, in order to effectuate a default judgment, the Court may conduct hearings not only to determine the amount of damages, but also to "establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2)(C). Given Strange's testimony regarding Davis's lack of culpability for any calls other than the one placed on February 11, 2019, his damages are limited to those arising from that one call and are governed by the current version of the statute, which was in effect as of that date.

FCC Rcd. 12142 (2020).)[8]  That decision, as quoted by Strange, provides that the use of spoofing allowed the defendant to "hide from potential civil actions" and that "the avoidance of culpability . . . is a benefit that qualifies as a thing of value—one with an ascertainable dollar value."  35 FCC Rcd. at *17.  Strange offered no proof at the hearing, however, that Davis was able to hide from him or avoid culpability due to the use of spoofing; indeed, her appearance as a defendant in this lawsuit indicates that he was able to identify her and seek recovery against her.  Strange has not demonstrated any ascertainable damages from the spoofing violations, and it is therefore recommended that the Court refrain from exercising its discretion to award damages under Louisiana law.

Moreover, it is not clear that Strange is entitled to recover under both the TCPA and Louisiana's Anti-Spoofing Act for the same conduct.  At least one federal court has called into question the ability of a plaintiff to recover under the TCPA and a similar state statute for the same violations.  *See Pasco v. Protus IP Sols., Inc.*, 826 F. Supp. 2d 825, 846 (D. Md. 2011) (determining that a party was likely not entitled to recovery under both the TCPA and its Maryland equivalent).  The Court has not identified any cases that allow for such double recovery under the Louisiana law or any other TCPA state-law equivalent.  In addition, the Court is guided by the general principle that "it 'goes without saying that the courts can and should preclude double recovery by an individual.'"  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297

---

[8] In *Affordable Enterprises*, the FCC ordered a $37,525,000 forfeiture based on more than two million unlawful, spoofed telemarketing calls that violated 47 U.S.C. § 227(b) and FCC Rules.  35 FCC Rcd. at 12143, 12148.  Relying on the "relevant statutory factors," its "own forfeiture guidelines," and "Commission precedent," the FCC determined that a base forfeiture rate of $1,000 for each spoofed call was "consistent with recent precedent."  *Id.* at 12165.  Though the basis of the forfeiture order was not § 227, the FCC noted that the $1,000 per call penalty "amounts to less than 67% of the statutory maximum of $1,500 per violation that is permissible to be imposed against Affordable in private civil litigation" under the TCPA.  *Id.* at 12165 n.185.

(2002) (quoting *Gen. Tel. Co. of Nw v. EEOC*, 446 U.S. 318, 333 (1980)).  Given the discretion afforded the Court in determining damages under the Louisiana law, it is therefore recommended that it would be inappropriate to award Strange additional damages beyond the $500 he is entitled to under the TCPA.

## **RECOMMENDATION**

Consistent with the foregoing, the Court hereby recommends that judgment be entered in Strange's favor and against Davis on Counts III, IV, IX, and X in the amount of $500.

Respectfully submitted this 17th day of February, 2023.

>   s/Annie T. Christoff
>   ANNIE T. CHRISTOFF
>   UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.